The certified issue in this case is whether Booker satisfied his Flores-Ortega issue, which is his claim that his counsel was ineffective for failing to file a notice of appeal on his behalf. It is clear from the record that Booker presented a federal claim in state court and alleged three things. First, that his counsel failed to file the notice. Second, that he failed to file, and in Booker's words, although it is clear, Booker has issues for appeal. And third, he cited Flores-Ortega, the controlling Supreme Court case on this petition, he alleged one more fact. He alleged the three facts that he had in his state court claim, plus another fact, which is that he requested an appeal from his counsel. Kagan. Which is a really critical factual difference and triggers a critically different legal analysis, doesn't it, under Rodriguez rather than Flores-Ortega? Well, Flores-Ortega specifically addresses the Rodriguez prong. So after Flores-Ortega, we don't have just one prong. We have a two-prong analysis. And you're correct. This is in the first prong, the Rodriguez prong. And his state court claim, his original state court claim, is in the second prong, the failure of counsel to fulfill his constitutional duty to consult. So, okay. The question is, though, what did he exhaust? And he at least exhausted a federal claim under Flores-Ortega. The question is whether that other claim, what you're calling the Rodriguez claim, is also exhausted. Now, before I answer that, I just want to say, this petitioner never had the opportunity to say, to forego the Rodriguez aspect of the claim and just amend his petition so that he had a fully exhausted claim. That opportunity should have been given to him. If he's in federal court and he has his facts one, two, and three, that he had an estate petition, that he — there was no notice filed, he had issues for appeal, and he cited Flores-Ortega, that was a fully exhausted claim that he could have had in federal court. And he was never given the opportunity to amend his petition to delete the extra aspect of his claim. Kagan. Why is the way he's speaking to me about this is, all of this was known to him. So he knew at the time he filed a state petition that he either did or didn't tell his counsel to file a notice of appeal. And that was obviously a critical determination to the state Supreme Court because it actually mentioned that. So now he comes into federal court and he suddenly decides that, oh, now I told counsel about it, but doesn't ask for any relief there or here having to do with an unexhausted claim. I'm not sure I understand just that last sentence that you said in terms of not asking for relief. Well, your briefing here doesn't ask for any kind of relief having to do with an unexhausted claim. My briefing doesn't request that. Yeah. Well, the relief that we would want is — well, first of all, I believe that he has fully exhausted the — I believe that his additional allegation in federal court did not render his claim unexhausted. I know, but if it did. But if it did, then he should be given the opportunity to have at least the opportunity to be given his Rines-Kelley options, which he was never given, or the opportunity — if I could just finish. Excuse me. Or the opportunity to amend his federal petition so that he just agreed, which is fully exhausted in state court. Okay. Here's a specific question. You didn't ask for a COA on that issue in the district court or for that relief in the district court. You didn't ask for Kelley relief in the district court. You didn't ask for COA on treatment — his treatment of the exhausted claims. Your opening brief here doesn't mention that relief, and although you have a line in your reply brief about exhausting the unexhausted claim or being allowed to, you still don't ask for that relief from us. So what are we supposed to do, just gratuitously say, ah, this may be a Rines problem? Well, this is — I didn't represent Booker below, which is one of his problems, is he didn't have counsel sort of helping to navigate these very difficult exhaustion issues. He got somewhat, I would say, misleading information, something that Plyler tells, we don't want the district court spelling out the menu of options because they might mislead the petitioners, and I think that's what happened here. And I have been to this court, and my office has been to this court on this exact same language, and we get remanded for the Rines-Kelley option. Just so — That was sort of happening a year and a half ago. Sui spondi? The issue — a year and a half ago or more, the issue was being certified. We — without oral argument, we've had those issues remanded numerous times. I've had one — Sui spondi. Yes. I'm not sure what you mean by sui spondi. Without argument. It's been briefed — I mean, without it being asked for. We just up and do it? That's what I mean by sui spondi. Well, the issue was certified, so we addressed it. So we did ask for it. In this case, I assume that the court was looking past that issue because we've been through that issue so many times. This language has not stood up in the Ninth Circuit so many times. And so now the court is simply looking past the merits of the issue was, was the issue exhausted? And it's — we've had the reverse situation in this Court. I've had the exact reverse situation where the certified issue was, was the Kelly v. Small in language given, and my uncertified issue was, well, he didn't even need that because he exhausted it. So here we have the flip, and there is an assumption here that the language is deficient. Just so — so we're on the same frame, okay? I completely agree with you that the district court got it wrong, okay? That's not the point I'm making. I'm saying that you didn't ask the district court to certify a Kelly-Rines issue. You didn't ask for that relief in your opening brief to us, and your reply brief to us does not ask for that relief. So why should we up and do it? Because this Court has the power to certify and review and rule on predicate issues to the issue that is certified. And the issue that is certified is the procedural question, was it exhausted? To get there, you can look at numerous cases from — and they're sort of failing me now, but you can look at other cases that says we can take the steps to get to that question. It's just the same as if you had an equitable tolling issue was certified. You can take the — you can make a legwork that gets you through statutory tolling before you reach the certified issue, which is equitable tolling. It's the same kind of exercise here. And we have the cases that show that that language is deficient. And he actually — he moved — he's the one who did the certified issues in the district court and was talking about the review of the exhaustion issue. So that's where he was coming from at that point. In your brief, reply brief at page 8, you say, if this Court affirms the district court's ruling that the Flores-Ortega claim is unexhausted, this Court should remand to afford Booker a stay option. Is it your position that you've at least there stated the belief you want? Yes, and I believe that's what Judge Reimer is telling me. The conclusion says that you ask this Court to hold the district court abuse at discretion by failing to appoint counsel, and he's entitled to an evidentiary hearing on his claim. I mean, you don't ask for reversal on the stay. Well, I don't say that in my conclusion, but I want reversal on the stay. I want reversal on the unexhaustion. And I do think that we can get to the next step, which is that he deserves an evidentiary hearing, just like the petitioner got in Flores-Ortega and in U.S. v. Sandoval-Lopez, to find out what actually went down between him and his counsel. I'll reserve the balance of my time. Thank you. Sure. Mr. Whelan. It pleases the Court, Counsel. My name's Robert Whelan. I'm a senior deputy attorney general employed by the Office of the Attorney General of the State of Nevada. I have the privilege of representing respondents in this matter. There are just a few points that I would like to make. First of all, the Federal District Court correctly noted that, or correctly found, that the petitioner had failed to exhaust ground four. As Your Honor already noted, there is a substantial difference between the claim that was alleged in the Federal habeas corpus action and the claim that was alleged in his State petition. Well, even so, you must agree that the District Court got the Kelley-Rinds language, Kelley at the time, Rinds hadn't come down, wrong. Actually, I don't necessarily agree with that, Your Honor. Well, how could it not be? Well, I would direct the Court's attention to the excerpt of the record, page 228. The Court gave Mr. Booker a couple of options. I know, and explicitly said a stay was not one of them. However, there was the functional equivalent of a stay. And I would point out that on page 229, under these circumstances, if the petitioner elects the second option described above, that is, if he chooses to return to State court to exhaust his unexhausted grounds for relief, the Court will order this case dismissed without prejudice and closed administratively, but will not enter judgment after exhausting his grounds for relief in State court. Petitioner may make a motion to reopen this action under the same case number and before the same reasoning. Would it relate back under an administrative closure? Relate back in the... Would a new filing relate back under an administrative closure? Is that another way? Would he run the risk of being time barred with this clock starting anew? There is that risk. And isn't that materially different than simply offering him a stay, where there's no risk of a time bar? Well, I think there's a risk of a time bar in either case. Well, how could there be a risk of a time bar if the Court stays and allows him diligently to go back to State court to explore the unexhausted claim? Well, there's a line of cases that exist now that says if the claim that is filed, say, in an amended federal habeas petition is brought once the time for the statute of limitations is run, there are time bars. The time bar may be applicable to that. The fact that there's a stay in advance does not necessarily save the person or the petitioner from a timeliness defense. But in this case, I don't know that we're necessarily even concerned about that because it's not part of the Certificate of Appealability. What is presented here is whether or not the federal district court erred in determining that ground four of the federal habeas petition was unexhausted. And the court correctly determined that. What the, as we know from Roe v. Flores-Ortega, there's a wide spectrum of, and from Strickland itself, there's a spectrum of claims of ineffective assistance of counsel that are probably infinite in their factual allegations. And what Mr. Booker did in this particular case is he took it from one part of the spectrum to the extreme end of the spectrum, alleging that he told his counsel that he wanted to appeal and he did not. And counsel did not. And at the opposite end of that spectrum is where a petitioner obviously does not inform counsel or, excuse me, does, affirmatively tells counsel that he does not want to appeal. And then Roe v. Flores-Ortega addresses some of that middle ground. But the point is, with respect to this issue, is that the spectrum that is now alleged, the portion of the spectrum that is now alleged in the federal habeas claim, it's at the extreme end and it would actually satisfy the first prong of Strickland. That being that counsel's performance fell below an objectively reasonable standard. What he presented in state court is far different from that. Unless the court has any additional questions, that's all I have to say. Thank you. Okay. Ron? I think that counsel's argument straight off the bat there is reflecting what he says in page 2526 of his brief, which is that he is conceding at some level that there was an exhaustive claim here. The nature of that claim has shifted. And understandably, we recognize that, but we don't think it renders it unexhaustive. But I do want to touch on just a few things really quickly. First of all, just peeking ahead at the merits, that he does have a non-frivolous claim here. And I want to direct the court's attention to his guilty plea agreement and the minutes, which are on page 119 of the excerpt. The guilty plea agreement says that he was stipulating to a term of 10 years to life. The DA at his change of plea said the stipulation was made to 10 years. He stipulates to a sentence of 10 years. The stipulation was made to 10 years rather than 25 years to life. So he does have this claim that he got sucker punched at his sentencing. He was expecting 10 years. He got life with parole after 10 years, which is what the statute requires. But there is a non-frivolous claim there, just looking ahead. We would like the opportunity to amend the petition, if nothing more. We think the claim is exhausted. But if not, we'd at least like to reduce it back to what he exhausted in state court. Thank you very much. Thank you, counsel. The matter, just argued, will be submitted.
judges: Rymer, Wardlaw, Selna